UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PREMIUM SALES NETWORK, LLC,

     Plaintiff,

v.                                 CASE NO. 8:15-cv-2431-17AEP

MASTERSPAS, INC., and ROBERT
LAUTER,

     Defendants.

_____/

## ORDER

This matter comes before the Court pursuant to Defendant MasterSpas, Inc.'s ("Master Spas'") motion for partial summary judgment (Dkt. 37), Plaintiff Premium Sales Network, LLC's ("Premium's") response in opposition (Dkt. 47), Master Spas' construed reply (Dkt. 50), and Premium's construed sur-reply (Dkts. 51, 55). In addition, Master Spas filed a statement of undisputed facts (Dkt. 37-1), and Premium filed a statement of disputed facts (Dkt. 48). Premium also filed a motion to strike certain paragraphs of Master Spas' statement of undisputed facts (Dkt. 46), to which Master Spas responded in opposition (Dkt. 53).

Upon consideration, Master Spas' motion for partial summary judgment is **GRANTED** and Premium's motion to strike is **DENIED AS MOOT**.

## BACKGROUND

Premium owns United States Patent No. D695,895 ("the '895 Patent"), which claims an ornamental design for a spa with bilateral flanges and flares. Premium alleges that Master Spas and its CEO, Robert Lauter, willfully infringed the '895 Patent and

disseminated false and misleading advertising in violation of the Lanham Act.  The instant motion pertains only to the claim for patent infringement.

The '895 Patent issued from U.S. patent application No. 29/388,904 filed on April 4, 2011, which was a continuation-in-part application ("the CIP Application").  (Dkt. 37-1 ¶¶ 4-5).  The parties agree that spas bearing the patented design were in public use and on sale more than one year before the filing date of the CIP Application.  (Id. at ¶ 6).  As a result, Premium does not dispute that the '895 Patent would be invalid pursuant to the "on-sale bar" in 35 U.S.C. § 102, assuming that the date of the CIP Application controls.  However, Premium argues that it is entitled to claim the filing date of the CIP Application's parent application, which was filed on October 20, 2009 as U.S. patent application No. 29/345,652 ("the Parent Application").  (Id. at ¶ 5).  If the earlier filing date controls, Master Spas concedes that the on-sale bar does not apply.  (Dkt. 37 at 11).

The instant motion turns on Master Spas' contention that Premium is estopped from claiming the earlier date.  In particular, Master Spas relies on a line of cases holding that an applicant "acquiesces" in a patent examiner's final rejection under 35 U.S.C. § 112 by electing to file a CIP application rather than pursue other avenues of relief.  Master Spas invokes the estoppel-by-acquiescence theory in this case because Premium's Parent Application was subject to a final rejection under 35 U.S.C. § 112 and Premium then filed its CIP Application.  As explained in detail below, the Court agrees with Master Spas that Premium acquiesced in the patent examiner's final rejection, given the specific facts of this case.  A brief review of the '895 Patent follows.

The '895 Patent is a design patent, which covers "ornamental design[s] for an article of manufacture."  35 U.S.C. § 171(a).  A drawing is an essential element of a design patent

2

application and is subject to various requirements. E.g., 37 C.F.R. § 1.152.

On October 20, 2009, the Parent Application was filed by Brian Wiley and Brad Glover ("the applicants") pursuant to their authority as inventors. (Dkt. 37-5 at 3; Dkt. 37-1 at ¶ 5). During the prosecution of the Parent Application, the patent examiner, David Muller, issued a non-final office action in which he objected to the drawings and rejected the claim under 35 U.S.C. § 112. (Dkt. 37-1 at ¶ 8; Dkt. 37-5 at 33). On September 8, 2010, the applicants submitted amended drawings. (Dkt. 37-1 at ¶ 10).

On December 2, 2010, Muller issued a final office action, which included a final rejection under 35 U.S.C. § 112. (Id. at ¶ 11). Among other findings, Muller concluded that the "amended drawing figure filed 9/8/2010 . . . introduc[ed] new matter not supported by the original disclosure." (Id. at ¶ 13).

The applicants did not appeal Muller's final rejection of the Parent Application or seek reconsideration through an amendment or a continuation application. (Id. at ¶ 15). Instead, the applicants filed the CIP Application on April 4, 2011. (Id. at ¶ 16; Dkt. 37-5 at 80). The applicants abandoned the Parent Application in early June 2011. (Dkt. 37-1 at ¶ 5; Dkt. 37-5 at 77). The intrinsic record indicates that the CIP drawings were submitted in response to Muller's final rejection of the Parent Application. (Dkt. 37-1 at ¶ 17).

During the prosecution of the CIP Application, Muller rejected the claim again, objected to the drawings, and issued a Continuation in Part Caution ("CIP Caution"). (Id. at ¶ 18). The CIP Caution stated: "[U]nless the filing date of the earlier application is actually needed, such as to avoid intervening prior art, the entitlement to priority in this CIP application will not be considered." (Id. at ¶ 19; Dkt. 37-5 at 103).

On May 30, 2013, the applicants filed a response to the office action. (Dkt. 37-1 at

3

¶ 20).  In their response, and subsequently in prosecution of the CIP Application, the applicants stated nothing regarding the CIP Caution or the sale and public use of the patented design more than one year before the filing date of the CIP Application.  (Id. at ¶ 21).  In the prosecution of the CIP Application, Muller did not consider "the entitlement to priority."  (Id. at ¶ 23).  On December 3, 2013, the CIP Application issued as the '895 Patent.  (Id. at ¶ 24).

The parties stipulate that, if Brian Wiley were asked why the CIP Application was filed, Wiley would testify as follows: "The CIP Application was filed because patent counsel advised that the filing of a CIP application would be a faster and less expensive process than continuing to prosecute the parent application of the CIP."  (Dkt. 37-21; Dkt. 37-1 at ¶ 26).

Premium filed this action on October 14, 2015, naming Master Spas as the only defendant.  (Dkt. 1).  On July 22, 2016, Premium filed an Amended Complaint, adding Master Spas' CEO, Robert Lauter, as a defendant, and alleging two claims: patent infringement (Count I) and violation of the Lanham Act (Count II).  (Dkt. 30).  On August 4, 2016, Master Spas filed a counterclaim seeking a declaratory judgment of non-infringement and invalidity.  (Dkt. 33 at 6).

On October 14, 2016, Master Spas filed the instant motion for partial summary judgment on the issue of liability for patent infringement alleged in Count I of the Amended Complaint.  (Dkt. 37 at 6).  In addition to the invalidity argument outlined above, Master Spas argues that Premium did not comply with the patent marking statute, 35 U.S.C. § 287.  Because the Court resolves the instant motion on the issue of invalidity, Master Spas' alternative argument is not addressed.

4

**LEGAL STANDARD**

A patent infringement action is subject to the same standard for summary judgment as other civil actions. Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1054 (Fed. Cir. 2001).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden by "negating an element of the non-moving party's claim," or by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." Id.

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). If the moving party succeeds in discharging the initial burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact that precludes summary judgment. Clark, 929 F.2d at 608.  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In assessing the sufficiency of the evidence, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997).

## ANALYSIS

A party seeking to invalidate a patent at summary judgment must submit clear and convincing evidence of invalidity. Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). In this action, Master Spas invokes the "on-sale bar" in 35 U.S.C. § 102, which provides that a person shall not be entitled to a patent if "the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent." Medicines Co. v. Hospira, Inc., 827 F.3d 1363, 1372 (Fed. Cir. 2016) (quoting former version of 35 U.S.C. § 102).[1]

The parties agree that spas bearing the patented design were on sale more than one year prior to the filing of the CIP Application on April 4, 2011. (Dkt. 37-1 at ¶ 6). But Premium argues that the controlling date is the filing date of the Parent Application: October 20, 2009. (Dkt. 47 at 4-5). Master Spas concedes that if the filing date of the Parent Application controls, the on-sale bar does not apply. (Dkt. 37 at 11). As a result, resolution of the instant motion turns on which date controls.

Premium claims the date of the Parent Application pursuant to 35 U.S.C. § 120. Section 120 provides that an application will have the same effect as a prior application if certain statutory requirements are met. Relevant here, the prior application must have disclosed the invention "in the manner provided by [35 U.S.C. § 112, first paragraph]." 35 U.S.C. § 120; Research Corp. Techs. v. Microsoft Corp., 627 F.3d 859, 870 (Fed. Cir. 2010).

---

[1] Because the applications resulting in the '895 Patent were filed before the effective date of the America Invents Act ("AIA"), the Court refers to the pre-AIA version of 35 U.S.C. § 102. Medicines Co., 827 F.3d at 1372; ClassCo, Inc. v. Apple, Inc., 838 F.3d 1214, 1218 n.2 (Fed. Cir. 2016).

Master Spas argues that Premium is estopped from making the required showing under Section 120 because the Parent Application was subject to a final rejection under Section 112 and Premium acquiesced in that rejection by filing a CIP Application. Pennwalt Corp. v. Akzona Inc., 740 F.2d 1573, 1578 (Fed. Cir. 1984); State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1233 n.* (Fed. Cir. 1985).   A more detailed explanation of the estoppel-by-acquiescence principle follows.

### Estoppel by acquiescence

When a patent examiner determines that an amended claim recites elements without support in the disclosure, the proper basis for rejection is Section 112, first paragraph.  Waldemar Link v. Osteonics Corp., 32 F.3d 556, 559 (Fed. Cir. 1994).  The first paragraph of Section 112 provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112.[2]  If the examiner issues a final rejection under Section 112, the applicant may: (1) appeal the examiner's decision through the administrative appeals process at the Patent and Trademark Office (PTO), (2) file a continuing application and reargue the point, or (3) file a CIP application adding support for the rejected claims.  Waldemar Link, 32 F.3d at 559.

A CIP application, by definition, adds matter not previously disclosed.  Litton Sys.,

---

[2] Pursuant to the AIA, the first paragraph of Section 112 was re-codified as Section 112(a), with no substantive changes.

7

Inc. v. Whirlpool Corp., 728 F.2d 1423, 1436-37 (Fed. Cir. 1984).  In particular, a CIP application is filed during the lifetime of an earlier application and repeats a "substantial portion or all" of the earlier application and also adds new matter.  Id.  Because a CIP application necessarily contains new matter, an applicant's decision to file a CIP application in response to a final rejection under Section 112—rather than to appeal or file a continuation application—constitutes an implicit admission that there was new matter in the parent application.  Id. at 1438; Pennwalt Corp., 740 F.2d at 1578.

In this situation, the Federal Circuit holds that the patentee acquiesces to the final rejection under Section 112 and is estopped from arguing that the parent application complied with Section 112, first paragraph. Pennwalt Corp., 740 F.2d at 1580 & n.13.  And if the patentee is unable to show that the parent application disclosed the invention "in the manner provided by [Section 112, first paragraph]," the patentee is unable to gain the benefit of an earlier filing date under Section 120.  Id.

Although the filing of a CIP application to overcome a final rejection implies acquiescence, it does not give rise to an irrebuttable presumption of acquiescence. Pennwalt Corp., 740 F.2d at 1578.  The party asserting invalidity has the burden of establishing "by clear and convincing evidence that the filing of a CIP application and its issuance as a patent constituted an acquiescence by [the patentee] in the PTO's rejection." Id. at 1579.  "[O]nce a prima facie case of acquiescence is established, the patentee must come forward with countervailing evidence."  Id.

### Master Spas' prima facie case

The first question is whether Master Spas has made a prima facie showing of acquiescence.  The case law indicates that something is required beyond the mere filing

8

of a CIP application after a final rejection under Section 112.  For instance, in <u>Pennwalt</u>, the Federal Circuit addressed whether the CIP application was filed "to overcome" the rejection and held that a sufficient prima case was established where the CIP application addressed the deficiencies noted in the final rejection.  <u>Pennwalt Corp.</u>, 740 F.2d at 1578-79; <u>see also</u> <u>Litton Sys., Inc.</u>, 728 F.2d at 1438-39 (reviewing in detail the patent's history and explaining that the applicant voluntarily changed its Rule 60 continuation application to a CIP application after an interview with two examiners); <u>Paperless Accounting, Inc. v. Bay Area Rapid Transit Sys.</u>, 804 F.2d 659, 663–64 (Fed. Cir. 1986) ("The filing of a continuation-in-part, in and of itself, is not an admission of the correctness of a rejection.").

Master Spas establishes its prima facie case.  Muller issued a final rejection of the Parent Application as follows:

> The claim is rejected under 35 U.S.C. § 112, first paragraph as failing to comply with the description requirement thereof since the addition of surface shading to the drawings that defines forms previously undisclosed, introduces new matter not supported by the original disclosure.  New matter is also introduced as shown in the annotated drawings below.

(Dkt. 37-5 at 62).  Muller's annotated drawings identified three types of new matter: (1) the removal of a "third line" from one feature of the spa, (2) a "different" appearance in one area of the spa, and (3) a line "not shown in the original drawing."  (Dkt. 37-5 at 63-65).

Notably, the CIP Application included features that Muller rejected as new matter.[3]

---

[3] Master Spas' primary support for this argument is Exhibit 14 to its motion for summary judgment, which offers a comparison of the drawings in the Parent Application and the CIP Application.  (Dkt. 37-17).  Premium moved to strike Exhibit 14 on the basis that it contained unsupported expert opinion and legal argument that exceeded the page limit.  (Dkt. 44).  Master Spas forcefully disputed both points.  (Dkt. 49).  Premium then withdrew its motion, with the caveat that it did not stipulate to counsel's arguments.  (Dkt. 52).

The CIP Application included the same line "not shown in the original drawing," which Muller identified as new matter. (Dkt. 37-5 at 62, 65, 85, 119). The CIP Application removed the entire interior portion of the spa including the "third line," the removal of which Muller objected to as new matter. (Dkt. 37-5 at 62-63, 81, 116). In addition, the CIP Application included additional shading, which was the subject of Muller's first objection ("the additional of surface shading to the drawings that defines forms previously undisclosed, introduces new matter"). (Dkt. 37-5 at 9, 51, 62, 82, 117).

The Court therefore finds, similar to Pennwalt, that the nature of the changes made in the CIP Application indicates that Premium filed the CIP Application to "overcome a PTO rejection." Pennwalt Corp., 740 F.2d at 1578-79. That conclusion is buttressed by two additional facts. First, the Parent Application and the CIP Application each included only one claim. Thus, the submission of new matter in the CIP Application necessarily was directed to the claim that Muller rejected as containing new matter. Cf. Waldemar Link, 32 F.3d at 559 (noting that priority dates under Section 120 are determined on a claim-by-claim basis).

Second, the parties have stipulated that Brian Wiley would testify that the CIP Application "was filed because patent counsel advised that the filing of a CIP application would be a faster and less expensive process than continuing to prosecute the parent application of the CIP." (Dkt. 37-21). The fact that Wiley filed the CIP Application for expediency only supports the conclusion that the application was filed to overcome the final rejection. B&S Plastics Inc. v. Hydro Air Indus. Inc., No. SA CV 95-492, 1995 WL 811901, at *3 (C.D. Cal. Oct. 10, 1995). As the Federal Circuit explained in Litton, an applicant's voluntary decision to file a CIP application does not prevent the application of estoppel:

> [The patentee] cannot argue, that is, that it did not <u>have</u> to file a C-I-P declaration and, therefore, should not be bound by it. A patent attorney is often faced with choices during a patent prosecution. If an attorney or patentee makes a mistake, the PTO permits the patentee to institute reissue or reexamination proceedings in certain instances. A patent attorney should not be able, however, to choose one course of action within the PTO with the anticipation that, if later checked, he or she can always choose an alternate course of prosecution in a trial before a federal judge.

<u>Litton Sys., Inc.</u>, 728 F.2d at 1439 (emphasis in original).

Based on the foregoing, Master Spas establishes that the CIP Application was filed to overcome the PTO rejection and that Premium implicitly acquiesced in the new matter rejection.

### Premium's countervailing evidence

Because Master Spas establishes a prima facie case of acquiescence, Premium has "the burden of coming forward with countervailing evidence."  <u>Pennwalt Corp.</u>, 740 F.2d at 1579.  For the reasons explained below, Premium fails to rebut the prima facie case.

Premium relies on a declaration from an expert witness, Chris Tanner, who is a registered patent attorney and a former patent agent and patent examiner for the PTO. (Dkt. 47-3).  According to Tanner, "the CIP Application . . . did not include any matter that had been rejected by the patent examiner as 'new matter' in the [final rejection]."  (<u>Id.</u> at ¶ 10).  Tanner opines that Muller's final rejection "specifically called out three different assertions of 'new matter,'" none of which were included in the CIP Application.  (<u>Id.</u> at ¶¶ 11-12).[4]  In its response brief, Premium repeats that assertion and cites to an exhibit

---

[4] Tanner's opinions in Paragraph 7 and 8 are not relevant to the threshold issue of estoppel, and Premium does not rely on those opinions in connection with its estoppel argument. (Dkt. 47 at 10-11); <u>Pennwalt Corp.</u>, 740 F.2d at 1580 n.13; <u>Centocor Ortho Biotech, Inc. v. Abbott Labs.</u>, 662 F. Supp. 2d 584, 595 & n.8 (E.D. Tex. 2009).

comparing the drawings.  (Dkt. 47 at 10-11; Dkt. 47-4; Dkt. 48 at ¶¶ 3-4).

Tanner's statement that the three types of new matter were not included in the CIP Application is wholly conclusory.  He provides no citations to the patent file, and he does not provide a more specific explanation for his opinion.  Tanner's opinion (and counsel's parallel argument) is also contradicted by evidence in the patent file, which demonstrates that previously-rejected new matter was included in the CIP Application, as explained above.  Accordingly, Tanner's opinion does not provide competent evidence for purposes of summary judgment.  Regents of Univ. of Minn. v. AGA Med. Corp., 717 F.3d 929, 941 (Fed. Cir. 2013) (holding that expert's unexplained conclusion was not sufficient to create a material factual dispute); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 427 (2007) (holding that conclusory expert affidavit did not preclude summary judgment on legal question of obviousness).

In addition to Tanner's declaration, Premium cites a portion of Wiley's deposition testimony, which, Premium argues, demonstrates that the CIP Application was filed for "improved draftsmanship of claims" as well as for expediency.  (Dkt. 47 at 11; Dkt. 48 at ¶ 5).  But contrary to Premium's characterization of this testimony, Wiley was not asked why the CIP Application itself was filed; he was asked why "little dotted lines" were "put in." (Dkt. 37-8 at 81-82).  As discussed, the parties have stipulated that Wiley would testify that the CIP Application was filed for expediency, which is not sufficient to overcome estoppel. (Dkt. 37-21); B&S Plastics Inc., 1995 WL 811901, at *3.

Moreover, Wiley's testimony about why the "little dotted lines" were "put in" is consistent with acquiescence.  The cited portion of Wiley's testimony states:

Q:     And you won't tell us why [the little dotted lines] were put in?

12

> A:    The examiner—the attorneys and examiner needed to change the picture slightly.  They requested.  That's all I know.

(Dkt. 37-8 at 81-82; Dkt. 48 at ¶ 5).  Wiley's testimony thus establishes that changes to the drawings were called for by the examiner.  Similar to <u>Litton</u>, the filing of new drawings at the examiner's behest, and without any objection documented on the record, constitutes implied acquiescence.  <u>Litton Sys., Inc.</u>, 728 F.2d at 1439-40.

Premium identifies no other specific record evidence to rebut Master Spas' prima facie case.  Accordingly, the record demonstrates that the CIP Application was filed to overcome objections to the new matter included in the Parent Application, that Premium acquiesced to the new matter rejection, and that Premium is therefore estopped from claiming an earlier filing date under Section 120.  <u>Litton Sys., Inc.</u>, 728 F.2d at 1439-40; <u>Pennwalt Corp.</u>, 740 F.2d at 1579-80; <u>Centocor Ortho Biotech, Inc.</u>, 662 F. Supp. 2d at 594-95.

Premium does not dispute that, if the Court finds that the CIP Application date of April 4, 2011 controls, the '895 Patent is invalid pursuant to the on-sale bar in 35 U.S.C. § 102.  Accordingly, Master Spas' motion for partial summary judgment is granted on the issue of liability for patent infringement alleged in Count I of the Amended Complaint.  The Court does not address Master Spas' alternative argument under the patent marking statute.

## <u>CONCLUSION</u>

Based on the foregoing, it is **ORDERED** that:

(1)    Defendant MasterSpas, Inc.'s motion for partial summary judgment (Dkt. 37) is **GRANTED** on the issue of liability for patent infringement alleged in Count I of the Amended Complaint.

(2)      Plaintiff Premium Sales Network, LLC's's motion to strike (Dkt. 46) is **DENIED**

**AS MOOT** because the Court has not relied on the challenged paragraphs.

**DONE AND ORDERED**, in Chambers, in Tampa, Florida on this /4th day of

December, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of record

14